UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HOOK,

        Plaintiff,

                                Case No. 15-cv-10159

v.

                                HON. MARK A. GOLDSMITH

UNITED STATES OF AMERICA,

        Defendant.

_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (Dkt. 43)**

Plaintiff Daniel Hook brought this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., asserting a claim for medical malpractice in connection with his treatment for abdominal pain at the Veteran's Administration ("VA") Medical Center in Ann Arbor, Michigan. The Government filed a motion for partial summary judgment (Dkt. 43), arguing that Hook is barred from pursuing pain and suffering damages while he was intubated and unconscious, as well as consequential damages for his alleged shortness of breath. A hearing on the motion was held on June 6, 2017. For the reasons stated below, the Court grants the motion.

## I. BACKGROUND

Hook is an 84-year-old former Marine who presented with abdominal pain at the emergency room of the VA Medical Center in Ann Arbor, Michigan on July 17, 2011. Def. Br. at 1; Def. Statement of Material Facts ("SMF") ¶¶ 9-11.[1] After Hook informed intake personnel

---

[1] Although Hook contests several of the Government's proffered facts, he did not reference or cite any record evidence to explain the factual disagreement. See 9/1/2015 Order at 5 ("If any of

that he was suffering from nausea and abdominal pain, and that he had not had a bowel movement for two and a half days, Dr. Jamie Sutton ordered x-ray imaging of Hook's abdomen. Def. SMF ¶¶ 11-12.  Hook was treated for constipation with an enema and was discharged the same day with instructions to contact the Ann Arbor VA if his condition worsened.  Id. ¶ 12.  According to Hook, Dr. Sutton did not follow up on the x-ray on July 17 and, by failing to do so, failed to diagnose a small bowel obstruction.  See generally Compl. at 3-4 (Dkt. 1); Pl. Resp. at 4 (Dkt. 44).

The following day, July 18, Hook presented at the Henry Ford Wyandotte Hospital with complaints of constipation and abdominal pain.  Def. SMF ¶ 13.  A physical examination was performed and the medical records indicate that Hook's bowel sounds were normal.  Id. ¶ 14.  While waiting for a CT scan of his abdomen and pelvis, Hook began vomiting and aspirating.  Id. ¶ 15.  Hook required intubation and mechanical ventilation for aspiration pneumonia and Adult Respiratory Distress Syndrome ("ARDS").  Id.  Hook was also immediately sedated.  Id.  Hook was intubated and on a ventilator from July 18 to August 3 and sedated with a variety of narcotics from July 19 to August 2.  Id. ¶¶ 17-18.

On July 20, an exploratory laparoscopic surgery was performed.  Id. ¶ 16.  During the surgery, an adhesion between the small bowel and a previous hernia repair was manipulated, which resolved Hook's abdominal issues.  Id.  No bowel was removed during the surgery.  Id.  Hook was then transferred to the Henry Ford Detroit Hospital on July 30.  Id. ¶ 17.  Hook

---

the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence.") (Dkt. 16).  Nor did Hook provide any additional material facts in his response.  Id. ("The non-moving party may raise additional material facts not implicated by the moving party's Statement under the separate heading 'Statement of Additional Material Facts.'").

suffered a variety of complications during his hospitalizations, but he was eventually discharged on August 16.  <u>Id.</u> ¶¶ 18, 21.

## II.  STANDARD OF DECISION

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact.  <u>Scott</u>, 550 U.S. at 380; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," <u>Scott</u>, 550 U.S. at 380 (quoting <u>Matsushita</u>, 475 U.S. at 586), as the "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 247-248) (emphasis in original); <u>see also</u> <u>Babcock & Wilcox Co. v. Cormetech, Inc.</u>, 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

# III. ANALYSIS

Although the doctrine of sovereign immunity generally precludes suits against the United States without its consent, the FTCA provides a limited waiver of that immunity, permitting "liability against the federal government 'to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" Kennedy v. U.S. Veterans Admin., 526 F. App'x 450, 453 (6th Cir. 2013) (quoting United States v. Orleans, 425 U.S. 807, 813 (1976)); see also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."). Because the FTCA constitutes consent to suit, as opposed to creating a cause of action, it is "fundamentally limited to cases in which a private individual would be liable under like circumstances." Kennedy, 526 F. App'x at 453 (quoting Premo v. United States, 599 F.3d 540, 544 (6th Cir. 2010)).

"[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." Kernstock v. United States, 559 F. App'x 428, 431 (6th Cir. 2014) (quoting Brown v. United States, 583 F.3d 916, 919-920 (6th Cir. 2009)). In this case, the cause of action is one for medical malpractice. Under Michigan law, Hook must establish the following four elements:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care.

Id. (quoting Craig ex rel. Craig v. Oakwood Hosp., 684 N.W.2d 296, 308 (Mich. 2004)); see also Mich. Comp. Laws § 600.2912a.

In its motion for partial summary judgment, the Government focuses its arguments on issues concerning damages — namely, the recovery of pain and suffering damages for a limited timeframe, as well as consequential damages for shortness of breath. The Court addresses each in turn.

## A. Damages for Pain and Suffering From July 18 to August 3, 2011

The Government first argues that, as a matter of law, Hook cannot recover damages for pain and suffering for the time period of July 18 to August 3, 2011, during which Hook was intubated and on a ventilator, because Hook was "sedated [with narcotic pain medications], unconscious, and has no memory of perceiving any pain, suffering or discomfort." Def. Br. at 19. The Court agrees.

To recover damages for pain and suffering, the plaintiff must be "consciously perceptive as to any pain, suffering, or discomfort." Santana Otero v. United States, 428 F. Supp. 2d 34, 51 (D.P.R. 2006); see also Stamm v. Miller, No. 14-cv-11951, 2015 WL 13047103, at *12 (E.D. Mich. Apr. 27, 2015) ("Because the plaintiff has provided the Court with no evidence of conscious pain and suffering and because Michigan law . . . only permit[s] injuries for damages that occurred while conscious, the Court will not permit plaintiff to recover pain and suffering damages."), aff'd, 657 F. App'x 492 (6th Cir. 2016), cert. denied sub nom. Miller v. Stamm, No. 16-1155, 2017 WL 1092613 (U.S. June 19, 2017). There is no indication from any of the evidence provided by either party creating a fact question whether Hook was ever consciously perceptive of pain and suffering while he was intubated and sedated.

Hook testified that he has no memory of the time period between his arrival at the Henry Ford Wyandotte waiting room and his waking up in a hospital recovery room breathing on his own. Daniel Hook Dep at 63-65 (Dkt. 43-6). In fact, Hook believed he was placed in a

medically induced coma and described that period of time as being "gone" from his memory.  Id. at 65.  As such, Hook cannot attest to any pain and suffering that would support recovery for these damages.

Hook's sons, Steven and Thomas, regularly visited their father in the hospital, and, according to them, Hook was not conscious while intubated.  See Steven Hook Dep. at 107 (Dkt 43-11) ("[His father] was unconscious and being monitored"); see also id. at 124 ("Q.  Okay.  Let me ask it differently.  While he was unconscious and you were visiting him, did you see any signs that he was in constant pain?  A.  No, he was unconscious."); Thomas Hook Dep. at 22-23 (Dkt. 43-12) (testifying that his father was non-communicative and non-responsive, stating that his father "was not with us at all").  Steven repeatedly described his father as being in a coma during his deposition.  See Steven Hook Dep. at 107, 113, 114, 123, 132, 142.  Neither Steven nor Thomas testified that they observed their father in any pain while he intubated.

The Henry Ford Hospital records also illustrate Hook's sedation during this time period.  See generally Henry Ford Med. Records (Dkt. 43-18).  While these records show that medical professionals attempted to decrease the level of Hook's sedation while he was intubated, see id., there is no evidence that Hook was ever experiencing pain during any of these efforts.

Based on these facts, the Court concludes that there is no genuine dispute that Hook was not consciously perceptive of any pain or suffering from July 18 to August 3, 2011.  Consequently, Hook cannot receive any award of damages for pain and suffering during this time period.

The arguments Hook raised in his response brief do not alter this conclusion.  For instance, Hook argues that the medical records demonstrate that he was "not fully sedated every day from July 18 to August 3," and that he was "responsive at times" and able to "follow verbal

commands or verbal instructions" because the medical records show that, on one occasion, he "nod[ded] yes/no when not sedated." Pl. Br. at 9-10 (Dkt. 44) (emphasis omitted); Henry Ford Med. Records at 12 (cm/ecf page). Although these records show that Hook was arguably conscious to some degree on one day during this time period, there is no evidence from which a jury could reasonably infer that Hook was also conscious of any pain on that particular day.

Hook also claims that he is "unquestionably currently 'conscious' of the pain and suffering he went through during that time (and continues to go through today)." Id. at 10. However, Hook did not provide a citation to any record evidence in support of this assertion. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." (emphasis added)). This statement that Hook is currently conscious of the past pain and suffering while he was sedated and intubated is also at odds with other portions of Hook's brief, in which he claims that he had "his memory stripped from him." Pl. Br. at 10. Hook does not explain how he can have his memory stripped but still remember the supposed pain and suffering.

For these reasons, Hook has failed to carry his burden as the nonmoving party of setting forth specific facts to show that there is a triable issue regarding his consciousness of pain and suffering from July 18 to August 3, 2011. At most, the medical records and his unsubstantiated assertions have only established a metaphysical doubt, which is insufficient for purposes of defeating this portion of the Government's motion.

### B. Consequential Damages for Shortness of Breath

Second, the Government argues that Hook cannot recover consequential damages for his alleged shortness of breath. The Government states that expert testimony is required to prove proximate causation in a medical malpractice action, especially where the nexus between the

injury and the alleged cause would not be obvious to the lay juror.  Def. Br. at 23-24.  According to the Government, there is no dispute that Hook's purported shortness of breath has multiple etiologies, especially given Hook's testimony in his 2008 lawsuit that his exposure to workplace asbestos caused serious lung damage and shortness of breath.  Id. at 24.  However, because Hook has not identified any expert witness to establish proximate causation between the breach of care at the Ann Arbor VA Hospital in 2011 and his current shortness of breath, the Government contends that it is entitled to summary judgment on Hook's claim for consequential damages for shortness of breath.  Id. at 24-25.  Again, the Court agrees.

For a traditional medical malpractice claim in Michigan, proximate cause includes two prongs: (i) "cause-in-fact" and (ii) "legal causation."  O'Neal v. St. John Hosp. & Med. Ctr., 791 N.W.2d 853, 858 (Mich. 2010).  Expert testimony is required to establish causation.  Kalaj v. Khan, 820 N.W.2d 223, 228 (Mich. Ct. App. 2012) (citing Teal v. Prasad, 772 N.W.2d 57, 63 (Mich. Ct. App. 2009)).  This is especially true when "an injury has multiple potential etiologies."  Accord Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d. Cir. 2004).  However, the fact that issues of negligence and causation are normally beyond the knowledge of a layperson in medical malpractice cases, expert testimony is not required if "the negligence claimed is a matter of common knowledge and observation."  Thomas v. McPherson Cmty. Health Ctr., 400 N.W.2d 629, 631 (Mich. Ct. App. 1986); see also Sullivan v. Russell, 338 N.W.2d 181, 186 (Mich. 1983) (recognizing an exception to the general rule that expert testimony is required in a malpractice case "when the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the standards of professional practice and care employed in the community").

Hook does not contend that expert testimony is not required to establish proximate causation in this case. Nor does he suggest that any of his experts will offer testimony to establish that the alleged breach of the standard of care at the VA hospital proximately caused his purported shortness of breath. Rather, Hook argues that a report authored by Dr. Jeffery Horowitz, who performed an independent medical examination of Hook in this case, is sufficient to establish the requisite proximate causation. See generally Pl. Resp. at 12-14.[2] The Court disagrees for two reasons.

First and foremost, Dr. Horowitz did not offer any sort of opinion in his report relating to the proximate cause of Hook's current claims of shortness of breath in general, or that the breach of the standard of care at the VA hospital was the proximate cause of Hook's shortness of breath in particular. This alone is fatal to Hook's implication that the report constitutes sufficient expert testimony to establish proximate cause under Michigan law in this medical malpractice action.

Second, Hook states that Dr. Horowitz performed a pulmonary function study and, after comparing it to prior pulmonary studies, concluded that there was a decline in Hook's pulmonary function, which was likely the result of the ARDS. Id. at 14; see also Horowitz Report at 6 (cm/ecf page) ("The aspiration induced acute lung injury/ARDS in July/August 2011 likely resulted in the decline in pulmonary function observed between August 4, 2010 and July 2,

_____

[2] Dr. Horowitz is a licensed physician specializing in pulmonary and critical care medicine, as well as a tenured Associate Professor of Medicine with an active appointment in the Division of Pulmonary and Critical Care Medicine within the Department of Medicine at the University of Michigan Medical School. Horowitz Report at 1 (cm/ecf page) (Dkt. 43-10). Dr. Horowitz also serves as the vice-chair of the fellowship training program's clinical competency committee within the Pulmonary Division, as well as the director of the respiratory pathophysiology sequence for second-year medical students and co-director of the respiratory physiology and pathophysiology sequence for first-year medical students. Id.

2012.").[3]  Hook argues that the report "clearly established the cause of the ARDS," because Dr. Horowitz wrote that, "from July 20 through July 30, 2011[, Hook] required continued ventilator support for ARDS due to aspiration pneumonia."  Pl. Resp. at 13 (quoting Horowitz Report at 3 (cm/ecf page)) (emphasis omitted).  Hook then claims that the aspiration pneumonia was "directly caused by" the VA physician's failure to diagnose the bowel obstruction at the Ann Arbor VA hospital.  Id. at 13.  However, Hook does not provide a citation to any evidence establishing this second causal link between the aspiration pneumonia and the alleged failure to diagnose the bowel obstruction.  See Fed. R. Civ. P. 56(c)(1)(A).  And Dr. Horowitz does not offer an opinion on that causal link either.

At most, the evidence presented to the Court demonstrates that, while waiting for an abdominal CT scan at the Henry Ford Wyandotte hospital, Hook vomited and aspirated gastric contents, which "required intubation and mechanical ventilation for aspiration pneumonia and ARDS."  Horowitz Report at 2.  But there is no evidence, let alone expert testimony, connecting the aspiration pneumonia and ARDS to the alleged breach of care.  Nor does Dr. Horowitz's report substantiate Hook's claims of shortness of breath.[4]  Because expert testimony is required to establish proximate causation in this medical malpractice action, and because Hook does not offer any expert witness to establish causation for his shortness of breath, Hook is unable to recover consequential damages for that purported injury.

## IV. CONCLUSION

---

[3] In the "conclusions" portion of his report, Dr. Horowitz also wrote that the pulmonary function impairment could have stemmed from asbestosis.  See Horowitz Report at 6 (cm/ecf page).

[4] The lack of evidence is also problematic, as Hook claimed that he experienced shortness of breath in 2008 regarding his exposure to workplace asbestos.  See Def. SMF ¶¶ 1-8.

For the reasons stated above, the Court grants the Government's motion for partial

summary judgment (Dkt. 43).

SO ORDERED.

Dated: June 30, 2017                         s/Mark A. Goldsmith
       Detroit, Michigan                   MARK A. GOLDSMITH
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and
any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2017.

                                        s/Karri Sandusky
                                        Case Manager